TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MOTION - MEMORANDUM BRIEF
DATE: 11/28/2022 06:23:54 PM

CIVIL ACTION CASE No.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| FARID FATA,<br>Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | CIVIL ACTION No.<br>JUDGE<br>MAGISTRATE |
| UNITED STATES OF<br>AMERICA,<br>Defendant. | ) <br> ) <br> ) <br>_____/ | |

PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF FEDERAL TORT CLAIMS ACT

COMPLAINT FOR DAMAGES

JURY DEMANDED

JURISDICTION AND VENUE

1- Plaintiff, Farid Fata ("Fata"), Prose, respectfully submits this Brief under the Federal Tort Claims Act (hereinafter cited as FTCA). This Court has jurisdiction under 28 U.S.C. & 1346(b), 2671-2680 of the FTCA. The FTCA allows "damages for injury or loss of property or personal injury or death caused by negligent or wrongful act or omission of any employee ... while acting within the scope of his office or employment under the circumstances where the United States, if a person would be liable to the claimant in accordance with the law of the place where the act or omission occurred".

2- Plaintiff has complied with all pre-suit requirements of 28 U.S.C. &1346(b), 2671-2680. Specifically, on 4-26-2022, Plaintiff Fata submitted a Government Standard Form 95 to the Bureau Of Prisons to make his administrative claim detailing the tortious acts committed against him (Doc. 1). The BOP's legal analyst determined that a response will be mailed on or before November 16, 2022. At no fault of his own, Fata never received an answer to this date, which warranted him to send a letter inquiring for a response to his tort claim but did not receive any (Doc. 2). Fata's filing of this Tort Claim meets the South Carolina statute of limitations. The district court has jurisdiction pursuant to 28 U.S.C.S. 2675(a) as more than six months have elapsed since Fata's Form 95 was filed with the agency (Doc. 2).

3- Fata's tort claim for personal physical injuries and negligence for repeatedly failing to protect Fata from COVID-19 with administrative delays in scheduling "urgent" specialist consultations in respect to

10

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

permanent post-Covid physical injuries at FCI Williamsburg are substantiated by his medical records.

4- The District of South Carolina is an appropriate venue under 28 U.S.C. & 1391(b)(2) and (e) because a substantial part of the events or omissions giving rise to the [claims] occurred within this district.

PARTIES:

5- Plaintiff Fata, a U.S. Citizen, is a federal prisoner housed at FCI Williamsburg South Carolina, provides the Memorandum Brief with factual allegations. Fata was at all times relevant to this action.

6- The United States of America is the appropriate party, with certain exceptions, for injuries caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his or her employment, in accordance with the law of the state where the act or omission occurred.

7- Warden Brian K. Dobbs was at all times relevant to this action the warden at FCI Williamsburg, South Carolina, and was acting under the color of state and federal law until his departure at the end of March 2021. By statute, the warden is responsible for ensuring the safety and protection of prisoners under his supervision. C.R.S.&17-1-104. By prison policy, the Bureau of Prisons' COVID-19 response plan has adopted the standard non-discretionary guidelines for contact tracing and testing once COVID-19 outbreak erupts in a housing unit, to mitigate the spread of the virus, prevent contagion and protect the lives of staff and inmates. Congress has allocated funds to implement a national strategy for contact tracing and testing in the Act March 11, 2021 (Doc. 3).

8- Same applies to Acting Warden, Mr. A. Mendoza who received Fata's emails on April 8, 2021, May 6, 2021 and June 17, 2021 and was aware of the new COVID-19 outbreaks and Fata's repeated exposure to COVID-19 in Fata's housing unit. Fata asked to implement contact tracing and testing under the BOP COVID-19 response plan, as surveillance is "essential" (Doc. 4), and the COVID-19 Enhanced staff screening is mandatory (Doc. 5). Prison officials were aware of the COVID-19 outbreaks in prison [in general] and in Fata's housing unit [in particular] and repeatedly failed to surveil the outbreaks in Fata's housing unit. As a result, Fata contracted COVID-19 and suffered permanent physical injuries.

9- Same applies to Dr. Stephen Hoey, DO, Clinical Director (CD) and K. Nolte, HSA, Health Services Administrator at FCI Williamsburg, South Carolina. Health workers involvement is extensive as detailed in this Memorandum Brief.

10- The United States (Bureau of Prisons / Warden Brian K. Dobbs and co-defendants) have the following duties to incarcerated individuals: &4040 Duties of Bureau of Prisons:

II

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------

(a) In general, the Bureau of Prisons under the discretion of the Attorney General shall --

(1) have charge of the management and regulation of all federal penal and correctional institutions;

(2) provide suitable quarters and provide for safekeeping care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction and discipline of all prisoners charged with or convicted of offenses against the United States.

11- Warden Brian K. Dobbs, Acting Warden A. Mendoza, Dr. Hoey (CD), K. Nolte (HSA) and FCI Williamsburg are a component of the Bureau of Prisons ("BOP") and follow the national BOP COVID-19 policies as they adhere to the COVID-19 Action Plans and BOP COVID-19 Response Plan: Both Plans contain "protective mandatory instructions" to implement contact tracing and surveillance testing and the COVID-19 Enhanced Staff Screening . These plans did not involve an element of judgment or choice.

COVID-19 Action Plans:
https://www.bop.gov/resources/news/20200313_covid-19.jsp

BOP Modified Operations :
https://www.bop.gov/coronavirus/covid19_status.jsp

12 - Warden Brian K. Dobbs, Acting Warden A. Mendoza, Dr. S. Hoey (CD), and K. Nolte (HSA), are the primary managers at FCI Williamsburg within the Bureau of Prisons.

13- The United States of America is the appropriate party for injuries by the negligent or wrongful act or omission of the Bureau of Prisons' employees acting within the scope of their employment, in accordance with the law of the State of South Carolina where the act or omission occurred.

12.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MOTION - LEGAL ANALYSIS
DATE: 11/29/2022 07:10:15 AM

Civil CASE No.

## LEGAL  ANALYSIS

This matter arises out of the response of the Federal Bureau of Prisons ("BOP") to the COVID-19 pandemic. Fata contracted COVID-19 and tested positive on December 18, 2020, which caused Fata permanent serious physical injuries.

Fata is raising claims of negligence against the Government for failing to protect him from COVID-19 by refusing to adhere to various statutes, regulations, and policies; as well as failing to timely schedule Fata for "urgent" referral to see outside specialists as ordered. The record before the Court would enable the Court to determine whether the policies (BOP Memoranda - Action Plans and BOP COVID-19 response plan) prescribed specific conduct for BOP officials to follow. The record will also enable the Court to determine that the prison officials "conduct at issue" rises to the level of ordinary negligence and delays to timely schedule Fata for "urgent" outside specialist consultations to treat Fata's post-Covid physical injuries.

## STANDARD  OF  LAW

The FTCA provides for a limited waiver of the United States' Sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. Under circumstances where the United States, if a private person, would be liable to the Claimant in accordance with the law of the place where the Act or omission occurred". 28 U.S.C. 1346(b)(1); see also Medina v. United States, 259 F. 3d 220, 223 (4th Cir. 2001).

However, the FTCA does not waive the United States' Sovereign immunity under the "discretionary function exception" of 28 U.S.C. 2680(a). To determine whether the discretionary function exception applies, the Court must undertake a two-step inquiry. Sanders v. United States, 937 F.3d 316, 328 (4th Cir. 2019); Rich v. United States, 811 F.3d 140, 145 (4th Cir., 2015). First the Court must determine whether the nature of the defendant's actions is discretionary - that is whether the actions involve an element of judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991). The action is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because the employee has no rightful option but to adhere to the directive".

13

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------------

Gaubert, 499 U.S. at 322. Second, if the actions are discretionary, the Court must then determine whether the defendant's decision was made based on considerations of public policy. Id. at 322-23.

Here, Fata asserts that based on the United States' failures to act upon Fata's repeated notifications to implement the BOP COVID-19 response plan of contact tracing and surveillance testing, and based on the mandatory email notifications from the BOP central office regarding the COVID-19 Enhanced Staff Screening that were essential and mandatory (see attached exhibits), FCI Williamsburg's officials acted with ordinary negligence and lacked the discretion to repeatedly disregard those requests upon known BOP COVID-19 policies. Therefore, the discretionary function exception does not apply to Fata's specific tort claims under the FTCA. Indeed, the exhibits attached to Fata's complaint show that the specific elements of the BOP COVID-19 response plan amount to official policy that prescribes a course of action for an employee to follow". Gaubert, 499 U.S. at 322. Simply put, the BOP officials' actions or inactions were not discretionary and did not involve an element of judgment or choice based on considerations of public policy. Id.

As a result to defendant United States' administrative negligence in timely scheduling Fata for outside "urgent" consultations with an eight-month delay in seeing the urologist and eleven-month delay in providing hematology consultations, Fata suffered prolonged pelvic pain from recurrent active prostatitis. Here, Fata is not raising a medical malpractice suit simply because a "significant delay in the treatment of Fata's post-Covid physical injuries that caused Fata substantial pain and persistent active prostatitis", indicate an Eighth Amendment violation that Fata had raised in detail in his Bivens suit, Case No. 2:22-cv-01368-MGL-MGB. Estelle v. Gamble, 429 U.S. at 104-105 (holding that deliberate indifference may be demonstrated by "denying or delaying access to medical care").

Accordingly, Fata's second tort action founded in ordinary negligence prevails, based on administrative scheduling issues (not the denial and delays in medical treatment) , as he has established in numerous exhibits three essential elements :

(1) a duty of health care owed by the defendant United States to Fata.

(2) a breach of that duty by a negligent act or omission; and

(3) damage proximately caused by a breach of duty.

See Vinson v. Hartley, 324 S.C. 389, 477 S.E. 2d 715, 720 (S.C. Ct. App. 1996)).

Fata's Tort claim of delays to timely schedule Fata to see outside specialists "urgently" in respect to Fata's post-Covid physical injuries is about "ordinary negligence" as health officials acknowledged that

14

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------------

Fata should be sent to see the outside specialists "urgently", and their assurances to schedule Fata

extended from November 17, 2021, to February 11, 2022, to February 24, 2022, and Fata has not

seen the urologist until August 1, 2022, and the hematologist until October 18, 2022, knowing that

harm will result from the delay of scheduling Fata. Even a lay person would easily recognize that the

"urgent" consultation requested on November 30, 2021, requires "immediate" scheduling and intervention.

It is not a choice but a mandate, and this is substantiated by health provider's repeated request

written on February 24, 2022, ordering again an "urgent" referral to see the outside specialists

(see below) and the BOP COVID-19 response plan notes that outside "urgent" consultations should not be

delayed or postponed. Tyree v. United States, 814 Fed. Appx. 762; 2020 U.S. App. LEXIS 20582 (4th Cir. 2020)

(delay arising out of the exercise of discretionary functions, could also fairly be read as a result of

individual inattention or carelessness- Some discovery would assist the Court). Engaging in Discovery

would determine the performance of prison employees and would assist the court in ascertaining whether

any delay was in fact the result of individual carelessness or inattention.

As a result of the negligence in scheduling "urgent" outside consultations, Fata developed a new Urinary

tract infection/prostatitis on June 8, 2022 (see below) with pelvic pain and urinary burning, from

reurrent active prostatitis (see below). Therefore, prion officials violated the BOP COVID-19 response

plan that notes: "urgent consultations should not be postponed or rescheduled" (Doc. 40).

In "Tyree" the Fourth Circuit noted that "the challenged conduct of prison officials involve policy

considerations, to determine the appropriate time to intervene where other incidents or events have

occurred at the facility".  And that applies to Fata's claim for failure to quickly respond to new COVID-19

outbreaks and implement contact tracing and testing, where other inmates in Fata's housing unit

had also asked prison officials at the time to implement the BOP COVID-19 response plan of contact tracing

and testing, but their requests in May 2021 and June 2021 fell on deaf ears (see attached affidavits of

inmates Lorone Elijah and Brandon Polston). And no contact tracing and testing was performed in other

housing units in prison on or 24-48 hours after those dates. And Dr. Hoey conceded that health services at

FCI Williamsburg are short-staffed, as Dr. Hoey is the only doctor for 1500 inmates (see below).

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MEMORANDUM BRIEF (1)
DATE: 11/28/2022 08:49:09 PM

CASE No.

### FACTUAL ALLEGATIONS - MEMORANDUM BRIEF

DEFENDANT "UNITED STATES" AND ITS BOP OFFICIALS FAILED TO IMPLEMENT MANDATORY POLICIES OF THE BOP COVID-19 RESPONSE PLAN. B. DOBBS AND A. MENDOZA :

14- Fata is a 57 year old male with CDC-recognized medical conditions of type 2 diabetes, chronic neutropenia, being immunocompromised that weakens his immune system to fight infections, and place Fata at risk to develop severe illness from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html

15 - THE APRIL 2020 TO DECEMBER 18, 2020 EVIDENCE OF NEGLIGENCE TO IMPLEMENT SPECIFIC MANDATORY COVID-19 POLICIES :

Warden B. Dobbs and Associate Warden A. Mendoza:

(a) engaged in "affirmative conduct" that exposed Fata and the inmates in his housing unit to an "actual danger" that was "foreseeable" in the light of their knowledge of the obvious COVID-19 risks as Fata has notified them during the November 2020-December 2020 weekly unit inspection rounds (Doc. 6) after the November 2, 2020 COVID outbreak in prison (Footnote 1) that COVID-19 is a serious disease as Fata is diabetic and neutropenic. Fata asked to implement contact tracing and surveillance testing and after two inmates in Fata's housing unit tested positive for COVID-19 on December 7, 2020 (Footnote 2) that they were aware. The BOP COVID response plan noted that "surveillance is [essential... Institutions [should] develop a surveillance plan addressing contact tracing and surveillance testing" (Doc. 4). Both defendants did absolutely nothing to take steps to respond to Fata's requests knowing that COVID-19 places Fata at CDC high risk of severe illness and death, nor did they provide alternative remedies that protect Fata from the harm of COVID-19.

   As a result, Fata contracted COVID-19 and tested positive on December 18, 2020, Fata was sick with cough, headaches, and muscle pain. Inmates in Fata's housing unit were sick, and no contact tracing and testing was performed between December 7, 2020, and December 18, 2020, before Fata contracted COVID-19. 17 days later, on January 5, 2021, 86 inmates at FCI Williamsburg were reported to be infected with COVID-19, while 34 had recovered (Footnote 3) with three inmate deaths (Doc. 6).

(b) failed to restrict staff and inmates movements between different housing units in October-December

16

-------------------------------------------------------------------------------

2020 (Doc. 7). Inmates with work details in laundry, safety, commissary, and food service were housed at different housing units and repeatedly comingled at work.

Each work detail included individuals from different housing units as substantiated in Mr. Dobbs Memorandum . After the November 2, 2020 COVID-19 outbreak in prison (Footnote 1), both defendants failed to prevent the mixing of inmates and failed to adhere to the Phase 9 Enhanced Modified Operations Plan that was extended on November 1, 2020 (Doc. 8).

(c) allowed the transfer of inmates considered to be at higher risk for exposure and transmission who are coming from a NON-BOP location, with unknown movement procedures, may not have undergone repeat testing or symptom screening under the BOP COVID-19 response plan, module 6 that notes "At no time should inmates in BOP Groups be mixed with NON-BOP Groups" (Doc. 9).

As a result, screened inmates for COVID-19 were mixed with unscreened inmates in R & D (Receiving and Delivery Department) for hours in a closed room without physical distancing upon arrival at FCI Williamsburg while undergoing "intake". Such practice continued from July 2020 through December 2020, preceding Fata's COVID-19 infection. Transferred BOP inmates contracted COVID-19 and tested positive days after their arrival at FCI Williamsburg as substantiated by the affidavit of inmate Alan Goodman (Doc. 10).

(d) abandoned, while the facility was on modified lockdown, the preventative guidelines by, inter alia, failing to test officers outside the facility: Beginning December 2020, outside the facility testing was no more implemented as before which allowed COVID-19 to enter the facility (Doc. 11). Defendants B. Dobbs and A. Mendoza, breached their duty when they abandoned the non-discretionary preventive BOP COVID-19 response plan including the BOP COVID-19 Memoranda (https://www.bop.gov/foia/docs/2020_ COVID_memos.pdf), and defied the BOP email on April 24, 2020, and the procedures set in place by the DOJ and CDC to prevent federal prisoners from contracting COVID-19.

These procedural changes on the process of screening staff daily that allowed the virus to walk in to the facility is substantiated by the testimony of the president of staff union Stephen Pinckney, representing FCI Williamsburg's employees who called for the removal of executive staff, as the BOP COVID response plan noted that  "All employees must be screened" "upon arrival" with a temperature check, as well as symptom control screen or whether they had contact with a COVID-19 case (Doc. 5). Defendant Dobbs defied his own memoranda on March 31, 2020; April 7, 2020; and August 21, 2020,

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------

where he noted that staff screening is performed at the "institution entrance" 24 hours a day (Doc. 6).

As a result of these failures, Fata contracted COVID-19 and suffered cough and muscle and joint pain, and long Covid (Doc. 12) plus post-Covid multi-organ recurrent infections.

(e) [received] the ICS 211(p) forms for staff accountability daily, as they knew of staff failures to comply with the Enhanced Modified Operations Plan that could and would lead to disciplinary actions (Doc. 4).

16 - Dr. HOEY's AND HSA NOLTE's NEGLIGENCE FROM APRIL 2020 TO DECEMBER 2020 TO IMPLEMENT SPECIFIC COVID-19 POLICIES :

(a)- In his clinical encounter on 9-30-2020 during "COVID-19 Enhanced Modified Operations" Plan, Dr. Hoey knew that Fata is diabetic and neutropenic (Doc. 13), at risk to develop severe illness from COVID-19. As health services staff report their inmate COVID cases to the warden and local health authorities (Doc. 14), Dr. Hoey knew that on December 7, 2020, a new COVID outbreak erupted in Fata's housing unit, but Dr. Hoey failed to implement the BOP COVID-19 response plan of "non-discretionary surveillance of contact tracing and testing". As a result, Fata tested positive for COVID-19 on December 18, 2020 (Doc. 15) and became symptomatic and suffered physical injuries (Doc. 16).

As surveillance of contact tracing and testing is [essential] and [should] be implemented (Doc. 4) and does not involve an element of judgment or choice, only negligent medical provider would have so responded under those circumstances.

(b) The BOP email (Doc. 5) sent to all institutional wardens, clinical directors and health services administrators on April 24, 2020, contained mandatory language that requires that any changes to the daily "COVID-19 Enhanced Staff Screening Tool" be approved by the health branch in health services division and that involves "in person" health officials Hoey (CD) and Nolte (HSA). Thus, health officials allegations that they executed the instructions (see below) of the BOP COVID-19 response plan to the effect of COVID-19 Enhanced Staff Screening beginning December 2020, is beyond reason as the record belies their assertion, as the number of inmates at FCI Williamsburg with active COVID infection sharply increased from 2 inmates (Footnote 2) two weeks [before] Fata tested positive for COVID-19 on December 18, 2020; to 86 inmates (Footnote 3) two weeks [after].

17 - THE APRIL 1, 2021 - JUNE 30, 2021 EVIDENCE OF NEGLIGENCE FOR REPEATED FAILURE TO IMPLEMENT CONTACT TRACING AND SURVEILLANCE TESTING UPON THE COVID-19 POLICIES :

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

17(a) -  FATA's APRIL 8, 2021 E-MAIL TO THE WARDEN : (Doc. 17)

On April 8, 2021, Fata notified warden A. Mendoza after having contracted COVID-19 and being immunocompromised. Fata has sounded the alarm for the risk of recurrent infections including COVID-19 in his housing unit, predicting the May 6, 2021 recurrent COVID outbreak . Unit manager Mrs. Bufkin, had communicated with health services administrator to prevent the emerging infections in Fata's housing unit. On April 27, 2021, Fata developed left arm skin infection requiring antibiotics (Doc. 18).

17(b) - FATA's MAY 6, 2021 EMAIL TO THE WARDEN AND ASSOCIATE WARDEN: (Doc. 19)
AND THE JUNE 1, 2021 COVID-19 OUTBREAK AT FCI WILLIAMSBURG :

In his email to warden A. Mendoza, on May 6, 2021, Fata sent "fair warnings" having contracted COVID-19 and long Covid and being immunocompromised, as new COVID-19 outbreak erupted in his housing unit.

Fata defined the obvious harm from COVID-19 to him and the inmates in his housing unit after his exposure to inmate Lorone Elijah, developing cough, and presented the remedy needed by implementing contact tracing and surveillance testing. Fata also notified Mr. Mendoza during mainline, who assured Fata of handling the situation under BOP COVID policies, but failed to act upon them. Mr. Mendoza failed to respond to Fata's April 8, 2021 and May 6, 2021 emails. The affidavit of Mr. Elijah says it all as HSA K. Nolte knew of Elijah's May 6, 2021, COVID infection during the weekly inspection rounds in the SHU (Special Housing Unit for isolation) but she failed to implement contact tracing and testing in Fata's housing unit.

No action was taken by Mr. Mendoza and health officials even after Fata had notified them during mainline of the need to implement contact tracing and testing in Fata's housing unit to avert harm.

On June 1, 2021, the BOP reported that one inmate and four staff members at FCI Williamsburg tested positive for COVID-19 (Footnote 4), which preceded the "inevitable" outbreak in Fata's housing unit on June 16, 2021.

19

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MEMORUNDUM BRIEF (2)
DATE: 11/28/2022 08:45:11 PM

CASE No:

17 (c) - FATA's JUNE 17, 2021 EMAIL TO THE WARDEN : (Doc. 20)

On June 17, 2021, Fata emailed Mr. A. Mendoza with "fair warnings" based on his medical condition having contracted COVID-19 and being immunocompromised, and the obvious risk of exposure to COVID-19 after inmate Brandon Polston became acutely ill from COVID-19 and required hospitalization on June 16, 2021 (Doc. 21). Fata asked to implementing the BOP COVID-19 response plan of contact tracing and testing.

Warden Mendoza failed to respond to Fata's emails and no action was ever implemented to prevent "irreparable physical injury". Nor did Mr. Mendoza provide alternative remedies that protect Fata from the harm of COVID-19.

Here, warden Mendoza's repeated inactions before June 16, 2021 exposed Fata to the harm of COVID-19 as Fata experienced COVID symptoms for 4 days after the exposure, absent COVID testing, and five days later on 6-21-2021, Fata developed rising microalbumin levels suggestive of kidney injury with persistent neutropenia (Doc. 22), followed by a series of multi-organ recurrent infections.

17 (d) - FATA's JUNE 18, 2021 EMAIL TO HSA NOLTE AND HER RESPONSE ON JUNE 29, 2021 :

In his Grievance to HSA Nolte on June 18, 2021 (Doc. 23), Fata sent "fair warnings" of having contracted COVID-19 and long Covid. Fata notified Nolte of the obvious harm from being directly exposed to COVID-19 and the "essential remedy" needed by implementing contact tracing and surveillance testing to protect him from infection.

On June 29, 2021, HSA Nolte replied: "we are considering your request at this time", but took no action at all to implement the "needed urgent remedy" whatsoever amid the obvious risk of pervasive and unreasonable harm.

18 - Fata contracted COVID-19 being diabetic and neutropenic, as prison officials repeatedly failed to implement surveillance of contact tracing and testing (Doc. 4), as required to :

(a) run a Sentry Roster of the inmate quarters to identify roommates and close contacts.

(b) determine work contacts and recreation / activity contacts

(c) determine COVID-19 test results; last day of work, activities or visits.

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------

(d) Attempt to determine contacts within the last 48 hrs. since the development of symptoms or two days prior to the COVID-19 test, if asymptomatic. Have a plan in place for how close contacts of individuals with COVID-19 will be managed in Fata's housing unit.

(e) complete the "contact tracing worksheet" (Doc. 24) for exposed contacts to COVID-19 in Fata's housing unit on December 7, 2020; on May 6, 2021; and on June 16, 2021. Discovery is critical to determine the performance of health employees as they should turn in those worksheets.

19- On July 9, 2021, Fata developed fungal or yeast skin infection (Doc. 25).

20- On October 8, 2021, Fata developed prostatitis (Doc. 26), treated with short-course antibiotic. Fata inquired with the provider about a urology and hematology outside referral and was told that it will be ordered ASAP.

21- On November 17, 2021, HSA Nolte did verify that Fata was scheduled to see outside specialists (Doc. 27), which is simply untrue as the bureau provider did not enter the "urgent" urology consultation until November 30, 2021, (Doc. 28), and the hematology consultation until February 24, 2021.

22 - On November 28, 2021, Fata continued to experience long Covid (Doc. 29), and on November 30, 2021, Fata continued to experience hematuria and proteinuria (Doc. 30).

23 - On December 17, 2021, Fata developed recurrent prostatitis/UTI (Doc. 31), but none of the April 27, 2021; July 9, 2021; October 8, 2021; and December 17, 2021 encounters ever raised concerns that Fata has not been scheduled yet to see the urologist and hematologist.

24 - On February 11, 2022, Dr. Hoey assured Fata that he will see a urologist (Doc. 32). The consultation was written as "URGENT" as specified by the bureau provider, on 2-24-2022 (Doc. 33).

25 - Fata received no medical care the entire months of March, April, and May 2022. When Fata inquired with Dr. Hoey during mainline, he was told that he will be seeing the urologist ASAP.

26 - On May 25, 2022, Fata emailed Dr. Hoey and HSA Nolte, whether it is ethical for an "urgent" outside consultation to be delayed more than six months from November 17, 2021, to date, subjecting Fata for an excessive risk of harm as he continues to experience persistent hematuria, proteinuria and pelvic pain (Doc. 34).

27 - On May 30, 2022, Fata emailed Dr. Hoey in light of his urological symptoms and delays in seeing the urologist and hematologist (Doc. 35).

28 - On June 5, 2022, Fata emailed his complaint to HSA Nolte asking for action to schedule him to see the urologist ASAP (Doc. 36), to determine whether there is a surgical intervention needed, or whether Fata's

21

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------------------

recurrent prostatitis/UTI is mainly due to "neutropenia" which treatment may alter Fata's medical care.

29 - Upon the BOP COVID-19 response plan (Doc. 40), Fata asked Dr. Hoey to take steps and expedite the administrative process by personally calling the specialists for opinion and guidance in some way as directed by the urologist and hematologist before Fata's next appointment (Doc. 37), but Dr. Hoey assured Fata again that he is approved to see the urologist.

30 - On June 8, 2022, Fata had a "sick call" as to his urological issues and excruciating pelvic pain. Fata was found to have recurrent prostatitis with urinary tract infection(UTI) confirmed on urine culture (Doc. 38).

31 - Dr. Hoey violated the BOP COVID-19 response plan on two fronts. First, male inmates with symptomatic UTI's should be seen and assessed on the same-day, as shown in Appendix S (Doc. 39); instead, Fata was seen on "sick call" nine days later. Second, outside consultations for "urgent" conditions that are medically necessary should NOT be postponed or rescheduled (Doc. 40).

32 - By end of May 2022, Fata discovered that the hematology consult was not requested until February 24, 2022. Had health officials scheduled the outside hematology consultation earlier before Fata had developed symptomatic urinary tract infection on June 8, 2022, as they had promised Fata in November 2021, as noted above, Fata would have benefited from the hematologist's recommended (NEUPOGEN) therapy that would have altered Fata's medical care at the time. Accordingly, health officials' scheduling delays have subjected Fata to obvious prolonged pain and urological symptoms from relapsing active prostatitis.

33 - On August 1, 2022, the urologist opined that the neutropenia is possibly causative for Fata's history of recurrent infections, and the microscopic hematuria appears related to onset of Fata's infections of recurrent UTI's/prostatitis (Doc. 41).

34 - On October 18, 2022, and after 11 months wait, the hematologist opined that Fata has chronic cyclic neutropenia. He recommended "G-CSF - NEUPOGEN" treatment as outpatient (Doc. 42) as neutropenia is causative to Fata's post-Covid recurrent infections.

35 - On November 22, 2022, Dr. Hoey told Fata: "I am one doctor for 1500 inmates ... they do not give us help. We are short of one full time medical doctor and one full time nurse practitioner".

22

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MEMORANDUM BRIEF (3)
DATE: 11/28/2022 05:21:34 PM

CASE No.

36 - WARDEN MENDOZA SUPPORTED HSA NOLTE's NEGLIGENCE AND VIOLATIONS TO COVID-19 POLICIES:

Warden A. Mendoza failed to respond to Fata's email requests and failed to coordinate a comprehensive

intervention with health officers or provide alternative remedies, to avert the risk of pervasive

harm from the COVID-19 outbreaks in Fata's housing unit. On 8-19-2021,  Mr. A. Mendoza and HSA Nolte :

(a) claimed that FCI Williamsburg has "adopted" the COVID-19 guidance of the CDC and the BOP, but falsely

asserted that the administration officials followed the same guidance within the correctional setting,

as this was never implemented in Fata's Tort Claim.

(b) made untrue statement that "contact tracing is conducted following the same guidance... as indicated

by the COVID-19 Pandemic response plan", as the record belies their statement after the COVID outbreaks

and associated Fata's exposures in early December 2020, and on May 6, 2021, and June 16, 2021,

"contact tracing and testing under the BOP COVID response plan and CDC guidance" was [not] performed,

but was "ignored and disregarded", as substantiated in Fata's emails to Mr. Mendoza on May 6, 2021 and

June 17, 2021, and in Fata's and Brandon Polston's grievances and Administrative remedy cases.

(c) made factually unfounded conclusions that : "Town hall informational discussions are provided for

educational purposes ... this was not done to inform you that you were in fact in direct contact with a

positive individual but rather for you to monitor your symptoms". This statement is undermined on

6-16-2021 when Fata told his case manager Mr. E. Brown that he came in close contact with inmate B.

Polston on and before June 16, 2021, as substantiated in the affidavit of Mr. B. Polston, and in Fata's email

to Mr. A. Mendoza, on 6-17-2021 that he and other inmates were experiencing COVID symptoms.

(d) omitted Fata's medical records that show the wrongdoing in Fata's health care as Fata was inoculated with

the first dose of the Pfizer COVID vaccine on the same date of 6-16-2021 (Doc. 43), after his exposure to

Mr. Brandon Polston and two days after Fata was discovered with a local skin infection on June 14, 2021,

defying the CDC recommendation that the COVID vaccine should not be given concurrently with acute

illness or infection. The CDC recommendation is to wait if an individual has a short-term illness or

infection. https://www.cdc.gov/coronavirus

Instead, defendant Mendoza adds that "there was no indication or notation during your assessments

23

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------------

that you complained of COVID-like symptoms or requested further assistance in regards to a COVID exposure following the Town Hall meeting". As stated in Fata's Memorandum Brief, Fata developed symptoms lasting 4 days following his "COVID exposure", absent COVID-19 testing, and Mrs. Mims, RN, advised him to take Tylenol and Ibuprofen to control his symptoms. Five days later, on June 21, 2021, Fata's urine microalbumin was found to be elevated (Doc. 22), suggestive of kidney injury that required to add lisinopril treatment on December 17, 2021 because of new-onset proteinuria (protein wasting in the urine) to protect Fata's kidneys (Doc. 31). And two weeks later, on July 9, 2021, Fata developed a fungal or yeast skin infection (Doc. 25).

37 - Dr. Hoey and HSA Nolte FAILED TO SURVEIL COVID-19 OUTBREAKS IN PRISON UNDER THE BOP COVID-19 RESPONSE PLAN THAT PRECEEDED THE OUTBREAKS IN FATA's HOUSING UNIT :

Both Dr. Hoey and HSA Nolte ignored their duty as gatekeepers to implement the BOP COVID response plan of contact tracing and surveillance testing as the November 2, 2020; April 20, 2021; and June 1, 2021, outbreaks at FCI Williamsburg preceded the December 7, 2020; May 6, 2021; and June 16, 2021, COVID outbreaks in Fata's housing unit, respectively, that caused Fata to contract COVID-19, and suffer permanent physical injuries; which begs the question why both health officials failed to prevent pervasive harm as they each failed to implement the BOP COVID-19 response plan of contact tracing and testing as standard remedy to avert harm from the December 7, 2020, May 6, 2021, and June 16, 2021 outbreaks. And should they be held accountable for their callous negligence to [r]epeatedly inact on the known [r]isk of pervasive harm that [r]esulted again in Fata's permanent post-Covid physical injuries. Suffice to note that prison officials repeatedly failed to respond quickly to the new COVID outbreaks with contact tracing and testing in Fata's housing unit as no contact tracing and testing was ever performed at other housing units in prison on or 24-48 hours after the above mentioned dates.

24

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA MEMORANDUM BRIEF (4)
DATE: 11/28/2022 08:55:31 PM

CASE No.

HEALTH OFFICIALS HAVE BREACHED THEIR DUTY UNDER PROGRAM STATEMENTS 6190.04, AND 6013.01: INFECTION CONTROL METRIC

38 -   By disregarding and repeatedly omitting contact tracing and testing of the inmates at risk after exposure to COVID-19 in Fata's housing unit, health officials, have breached their duty for infectious disease control and management under BOP Program Statement 6190.04, dated 6-3-2014 as specified in Program Responsibility Infectious disease procedures that [incorporate and reference] standards, and binding guidelines from HHS, CDC and OSHA .

39 - Accordingly, The Program requires the CD and HSA to produce "Evidence of, at a minimum, quarterly infection Control meetings (minutes) and review of surveillance activities that are documented and included as part of the institution's Quality Improvement Program (QIP)" . i.e. those minutes and surveillance activities (COVID-19 surveillance testing) should be disclosed as "Discovery" that include each of the COVID-19 outbreaks that exposed inmates to harm in Fata's housing unit that defendant United States was aware in early December 2020, on May 6, 2021 and on June 16, 2021.

40 - Under Program Statement P6013.01, HSA K. Nolte is required to develop a "written plan" for Quality Improvement on the health care mission and scope of services provided at FCI Williamsburg, and that includes "Infection Control Surveillance" and the Clinical Director Dr. Hoey should measure outcomes associated with evidence based guidance to measure effectiveness of infection control activities : HSA Nolte and Dr. Hoey should disclose their "written plans" required under the policy to show how the institution addressed the new COVID-19 outbreaks in Fata's housing unit with respect to implementing contact tracing and testing to protect the inmates as this cannot be a product of BOP discretion, for it does not involve an element of judgment or choice as prisoners have an established right to be free from officials' NEGLIGENT acts or omission to their duty of health care owed by the defendant United States.

https://www.bop.gov/policy/progstat/6013_001.pdf

DEFENDANT UNITED STATES ACTIONS OR INACTIONS DEFY ITS OWN POSITION TO MITIGATE THE EFFECTS OF COVID-19 IN THE BOP :

41- Fata is notifying the Court of the United States' position filed in Court on September 23, 2022, to the effects of mitigating the harm from COVID-19 in the BOP, showing by principle non-discretionary

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

instructions of the BOP COVID-19 response plan. Defendant United States' actions or omissions do amount to negligent conduct in conscious disregard of an excessive risk to Fata's health and safety, being diabetic and neutropenic, as noted in his medical records,

(a) TO THE EFFECT OF FAILING TO RESTRICT INMATES AND STAFF MOVEMENTS BETWEEN DIFFERENT HOUSING UNITS :

Under United States v. Howard II, Case No. 2:20-CR-11, (E.D. Va. Sept. 23, 2022), in its Brief (ECF No. 230, Page ID # 2031), defendant United States admitted to the non-discretionary duties that "inmate movements are [limited] to "prevent congregate gathering and maximize social distancing" with movement "in small numbers" permitted to access the commissary, laundry, showers and phones. BOP Modified Operations (Nov. 25, 2020), https://www.bop.gov/coronavirus/covid-19_status.jsp

(b) TO THE EFFECT OF COVID-19 ENHANCED STAFF SCREENING :

Under "Howard" (ECF No. 230, Page ID # 2031), the United States admitted that :

"BOP also conducts temperature checks and COVID-19 screening for staff, contractors, and other visitors to its facilities. Anyone who registers a temperature of 100.4 F or higher cannot enter the building. Staff who exhibit symptoms are sent home".

CONCLUSIONS:

42 - Fata is requesting to engage in Discovery concerning the performance of prison officials in providing the "contact tracing worksheets" for exposed contacts in Fata's housing unit and in scheduling Fata for "urgent" outside consultations. Rich v. United States, 811 F. 3d 140 (4th Cir., 2015). A precision list of documents and emails are needed to develop the record and help the court ascertain the multifaceted depth of "negligence" involved in this case.

43 - Pursuant to 28 U.S.C. &1746, I declare and verify under penalty of perjury that the foregoing is true and correct.

44 - WHEREFORE, Plaintiff demands judgment against the Defendant UNITED STATES OF AMERICA, for compensatory damages ($300,000 Thousand dollars), interest, costs, and such further relief as the Court deems proper.

Respectfully Submitted,

*Farid Fata*    11- 28- 2022

Farid Fata
#48860-039
FCI Williamsburg;
8301 Hwy 521
Salters, SC 29590

26

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------

------------------------------------------------------------27------------------------------------------------------------

Footnote 1:

The Court noted that on November 2, 2020, 5 inmates and 8 staff members at FCI Williamsburg have

tested positive for COVID-19. United States v. Vinci, 2020 U.S. Dist. LEXIS 204441 (W.D.N.C. Nov. 2, 2020).

Footnote 2:

The Court noted that FCI Williamsburg has had two inmates and 8 staff member COVID-19 cases as of

December 7, 2020. United States v. Martinez, 506 f. sUPP. 3D 547 (N.D. OHIO, December 9, 2020)

Footnote 3:

The Court noted that as of January 5, 2021, 86 inmates and 8 staff member at FCI Williamsburg were

reported to be infected with COVID-19, while 34 had recovered. United States v. Carter, 2021 U.S. Dist.

LEXIS 1744 (M.D.N.C. January 6, 2021).

Footnote 4:

The Court noted that as of June 1, 2021, one inmate and four staff members at FCI Williamsburg tested

positive for COVID-19, United States v. Primus, 2021 U.S. Dist. LEXIS 103250 (M.D.N.C. June 2, 2021).

27